[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This judgment dissolves the marriage between these parties.
The parties intermarried in Enfield, Connecticut on June 29, 1979. They have essentially resided in Connecticut since the date of the marriage.
The marriage has broken down irretrievably with no reasonable hope of reconciliation.
A minor child, Michael Perina, born June 12, 1984, is issue of the marriage.
No other minor children have been born to the plaintiff since the date of this marriage.
Neither party nor the child have been the recipients of public assistance.
The parties met while serving in the armed forces. They married shortly after their discharge from the service.
The plaintiff-wife is 46 years of age. She is a college graduate, who was at one time certified as a teacher. She also has had specialized training in dental lab technology. She has not worked in either field during the course of the marriage. She has worked only part-time at unskilled jobs during the course of the marriage.
The defendant husband is 47 years old. He is a graduate of the Air Force Academy and has a master's degree in engineering from Stanford University. Defendant also has had graduate courses, but not a graduate degree in business.
Defendant throughout the marriage has worked at at least two jobs. Defendant was employed as an engineer at Hamilton Standard from 1979 until he was laid off in August of 1994. He subsequently obtained and continues to work in an CT Page 3665 engineering job for the Department of the Air Force. Defendant has been in the National Guard during the marriage and is currently a Lieutenant Colonel in the Air National Guard. The military duty primarily involves weekend work. For several years during the marriage, defendant worked a third job at a book warehouse for 20 hours a week.
This marriage represents the second marriage for the defendant, who had three children issue of his first marriage. The defendant's first divorce has resulted in protracted post-judgment litigation in Kansas.
The children from the first marriage resided primarily with the parties from 1988-1991. In 1991 two of the children returned to Kansas. Defendant has been arrested in connection with past due child support from the first marriage in the approximate amount of $42,000.
The plaintiff by agreement of the parties was a full time homemaker from 1984 through 1991.
Plaintiff has chronic health problems but is not disabled. Plaintiff is able to and should be working full time.
The parties alleged various fault grounds as to each other. The court does not attribute disproportionate fault for the breakup of the marriage to either party. Both parties demonstrated extremely difficult personalities — and have a basic personal incompatability which worsened over time.
The parties are essentially in agreement over an award of joint custody of the minor child with primary residence with the plaintiff mother. The defendant father seeks a typical non-custodial parent reasonable visitation schedule. The plaintiff seeks to limit visitation and allow no overnight visits.
The plaintiff asserts that the defendant has an unusual secret life, and volatile temper that dictates no overnight visits with his child.
The court finds that the defendant does not represent a danger to his son. The child misses his father, and needs a meaningful relationship with his father. The plaintiff has CT Page 3666 interfered with the relationship and continually undermined the defendant's relationship with his son. The defendant will enjoy a regular reasonable visitation schedule with his son; with the proviso that he not have adult sexual material available in the home during visitation and that he provide plaintiff with an address and telephone number where the child will be during visitation.
The plaintiff is permanently enjoined from visiting the defendant's residence, other than for a scheduled visitation transfer. Plaintiff is similarly enjoined from telephoning defendant other than to arrange visitation or report an emergency involving the child. Plaintiff may only call the child once during any visitation period of less than one week duration.
Both parties are ordered not to denigrate each other in front of the child and to limit discussions of each other with the child. Plaintiff has inappropriately and destructively involved her child in this dispute.
The defendant has not been visiting with his child so a transitional visitation schedule is ordered as follows:
April 27, 1996: Visit 10:00 a.m.-2:00 p.m.
May 4 and May 5, 1996: Visit 10:00 a.m.-2:00 p.m.
 May 18, 1996: 9:00 a.m. until May 19, 1996 9:00 a.m. (including overnight).
 May 31, 1996: After school until 7:30 p.m. June 2, 1996.
 By May 31, 1996 defendant will provide plaintiff with a telephone number for his residence.
 Thereafter alternate weekends from Friday afternoon until Sunday 7:30 p.m.
 Defendant will pick up child at school or at plaintiff's residence and return child to plaintiff's residence.
 By June 1, 1996 defendant will advise plaintiff of a two-week vacation period he will take with the child CT Page 3667 during the month of July or August. In subsequent years the two-week vacation schedule notice will be due by May 1.
 The parties will alternate holidays and share the Thanksgiving and Christmas holidays. Defendant will have the child for Thanksgiving eve 1996 to noon on Thanksgiving day, and from noon Christmas day overnight. In subsequent years the sharing of Thanksgiving and Christmas will alternate.
 Commencing in 1997 the defendant will also be entitled to a visitation for an entire school vacation week, each school year.
 Defendant will further have visitation with his son every Tuesday evening for up to two and one-half hours, between the hours of 5:00 p.m. and 9:30 p.m. at defendant's election a upon 48 hours notice.
In calculating the defendant's child support obligation and alimony award the court attributes to plaintiff an employment income of a net income of $300 a week. Child support is thus calculated pursuant to the guidelines at $150 a week. Alimony is awarded at the rate of $200 a week for a period from the date of the judgment until July 1, 2002, or the death of either party or the plaintiff's remarriage. The alimony is otherwise non-modifiable as to its term.
The court finds as arrearage due on pendente-lite alimony in the amount of $5,400. Defendant is ordered to pay $20 per week towards such arrearage.
The defendant's pension from his service with Hamilton Standard, which was earned during the course of the marriage, is split between the parties. The plaintiff is awarded a 50% interest in the defendant's Hamilton Standard by Qualified Domestic Relations Order. Plaintiff's counsel is to prepare such order and a judgment file and defendant is to cooperate in effectuating such order.
The defendant's pension resulting from his military service was primarily earned through pre-marital military service. Defendant will retain his entire interest in his military pension. CT Page 3668
Defendant will quitclaim his interest in the marital home to plaintiff in consideration of a mortgage in the amount of $25,000 representing his interest in the marital home. The defendant's receipt of less than 50% equity in the marital home is meant to reflect his award of the entire military pension and superior earning capacity. The mortgage will pay 5% simple interest annually and will be payable on the earliest of the following dates: July 1, 2002; the date of sale of the residence; or the date of plaintiff's remarriage. Interest accrued will be payable with the principal amount and will not be paid periodically.
The defendant will be responsible for the debts listed on his financial affidavit.
Plaintiff will be responsible for the debts listed on her affidavit.
Defendant will transfer title to the 1970 Mustang valued at $1,100 to plaintiff, who will sell it and apply proceeds to the Citibank obligation she will assume.
Defendant will maintain his existing life insurance policies with the plaintiff as beneficiary to secure his alimony and support obligations; for so long as such obligations continue.
Defendant will maintain health insurance for the benefit of the minor child through his employment. Defendant will cooperate in allowing plaintiff to convert her medical insurance coverage for the COBRA period. The cost of any COBRA coverage shall be the obligation of the plaintiff.
The 1985 Isuzu automobile will be the property of the defendant, the 1986 van will be the property of the plaintiff.
The defendant will have the tax exemption for the minor child. The defendant will have the benefit of the tax deduction for the mortgage and taxes for the years 1994 and 1995. The parties will cooperate in amending their tax returns to reflect these orders and will share equally any tax refunds.
The parties have agreed to the disposition of their CT Page 3669 personal property. Plaintiff is to remove his property within 45 days of the judgment.
All deeds, mortgages, titles and documents necessary to effectuate this judgment will be executed by the parties within 30 days of this judgment.
No counsel fees are awarded to either party. Plaintiff has expended $20,000 for legal fees to prior counsel whose advice she declined to follow. Defendant will not be responsible for the unnecessary cost and expense of this litigation.
The marriage is dissolved.
McWeeny, J.